## Lowry to the use of McKinney *versus* McKinney.

1. Lowry held a judgment against James which was a lien upon two tracts; James sold one to Ballard; John, with a knowledge of the sale, procured a release from Lowry of the other tract, then bought it of James and also bought Lowry's judgment. Ballard's tract was thereby discharged from the lien.

2. James's creditors were bound to resort to his other property before resorting to that sold to Ballard. Per JOHNSON, P. J.

3. Ballard's land was surety for Lowry's debt, and upon payment would be entitled to subrogation against the other land. *Id.*

4. The lot bought by John, being sufficient to pay the debt, his purchase of the lien extinguished it. *Id.*

March 30th 1871. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ. WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Warren county*: Of January Term 1871, No. 338.

On the 29th of November 1864, L. L. Lowry held a judgment against James McKinney for $412.81; this judgment was a lien on two pieces of land belonging to the defendant, one containing 80 acres and the other 10 acres. On that day the defendant agreed to sell the 10 acre lot to W. W. Ballard. On the 27th of February 1865, Ballard paid $6000, half the purchase-money on the contract, and had it recorded. On the 8th of June Ballard made a deed for the 10 acres to "The Great National Petroleum Company;" this deed was recorded June 26th. July 11th 1865, the plaintiff issued a scire facias on his judgment, which was served on the defendant, but on neither Ballard nor The Petroleum Company. September 27th, judgment was taken against the defendant for want of an affidavit of defence.

To September Term 1865, the company having paid $5000 more on the Ballard contract, brought ejectment for the 10 acres. Afterwards Lowry gave to John L. McKinney, the son of the defendant, this paper:—

"Warren, Pa., March 20th 1866.

"John L. McKinney:—

"This is to certify that I will release all my claims in the way of judgments against James McKinney, in Warren County Common Pleas, upon a certain piece of land situate in Brokenstraw Township, near Youngsville, now occupied and formerly owned by William McKinney, which you are about to purchase from James McKinney.                  L. L. LOWRY."

At and before the date of the paper, John knew that the defendant in the execution had made the agreement with Ballard and that $6000 had been paid upon it. On the 26th of March 1866, the defendant conveyed to John the 80 acre tract, being the one

[Lowry *v.* McKinney.]

mentioned in the above paper; it was of sufficient value to pay the judgment.

On the 9th of June 1866, there was a verdict in the ejectment for the Petroleum company, conditional upon the payment of $1088.52; the company paid the money into court. On the 3d of June 1867, Lowry assigned the judgment to John L. McKinney; afterwards the Petroleum company received a deed for the 10 acres, and the defendant in the ejectment, being also the defendant in the judgment, took the money out of court.

On the 2d of May 1868, a venditioni issued at the suit of L. L. Lowry, to the use of John L. McKinney, on the above-stated judgment against James McKinney. The 10 acre tract having been levied on and being advertised to be sold under this execution, on the application of the Petroleum company, the court ordered "the further execution of this writ stayed as to the 10 acres advertised, until the question is determined whether the same is a lien upon and should be collected from the real estate sold by the defendant to the Great National Petroleum Company."

The foregoing facts, it was agreed, should be submitted to the court on case stated, and "if upon the facts the court are of the opinion that the Great National Petroleum Company are entitled to have the execution on this judgment restrained as to the 10 acres herein named, then the court to make an order perpetually restraining the same; but if not, then the rule to be discharged."

Johnson, P. J., in his opinion, adopted by the Supreme Court, after stating the facts, said:— * * *

"These facts present two questions: First, whether the revival of the judgment in 1865, without service of the sci. fa. on the purchasers as terre-tenants, continued the lien of the judgment as to them; and second, whether under the circumstances the 10 acre lot, purchased by Ballard, is still held by the lien of Lowry's judgment and liable to be sold for its payment even if the service of the sci. fa. would otherwise be sufficient to continue the lien. As all that is material in our view will properly come in under our decision of the last question, we will give our attention exclusively to that.

"After James McKinney sold to Ballard these 10 acres, his creditors were bound in equity to exhaust first his other property on which they held liens before resorting to this; the court, on application, would have compelled them so to do. Ballard's land then sustained the relation of surety to the debt of Lowry and its purchaser, and upon payment of it would be entitled to subrogation to its lien on the debtor's other land. Of this fact the creditor with knowledge was bound to take notice. He could not, therefore, release any of the primary securities and expect to hold to the secondary. As Ballard had the right to demand that McKinney's other land should first be sold, the release of the

[Lowry *v.* McKinney.]

other land by the creditor, discharged his land from the lien by the same rule that the release of the principal discharges the surety. If, therefore, Lowry released his lien on the 83 acres in 1866, with Ballard's purchase of his 10 acres on record, he discharged the 10 acres from liabilities to sale by depriving Ballard of his security against the lien.

"If his letter or certificate to John L. McKinney, dated March 20th 1866, does not amount to a release of the lien, then the 83 acres purchased by John, on the 26th of the same month, is primarily liable to the lien and must be first sold, and it is agreed that it is sufficient to pay the debt. But John having bought both land and judgment, the latter is merged and the debt paid.

"John L. McKinney, who now controls the execution, is entitled to no favor the law would not have yielded to Lowry. He had actual as well as constructive knowledge that his father had sold this 10 acre piece to Ballard. With that knowledge he procured the release of the 83 acres he wanted to purchase, from the lien of Lowry's judgment, with a view probably of throwing it on to Ballard's lot. This the law will not permit. If he says the Lowry letter is not a release then this judgment is still a lien and that land must pay the debt. But he has since purchased the lien himself, which by operation of law extinguishes it, inasmuch as it is made part of the case stated, that the 83 acres is amply sufficient to pay it.

"Judgment is therefore entered upon the case stated for the defendant as represented by the Great National Petroleum Company, and a perpetual injunction granted against the sale of their 10 acres on the above-mentioned judgment, and plaintiff ordered to pay the costs of this case."

John L. McKinney removed the record to the Supreme Court, and assigned the above judgment for error.

*W. D. Brown*, for plaintiff in error.

*R. Brown*, for defendant in error.

The opinion of the court was delivered, May 8th 1871, by

READ, J.—The question in this case is so well presented and discussed in the opinion of the court below, that, for the reasons assigned by the learned judge,

　　　　　　　　　　The judgment is affirmed.